UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION AT LONDON

CRIMINAL ACTION NO. 6:22-CV-156-KKC-HAI

DAVID M. BRADLEY,                                                                       PLAINTIFF,

v.                         **OPINION AND ORDER**

LAUREL COUNTY, KY, *et al.*,                                          DEFENDANTS.

\* \* \* \* \*

This matter is before the Court on Magistrate Judge Hanley A. Ingram's Report and Recommendation (R. 86) regarding Defendants' Motion for Summary Judgment (R. 71) and Motion to Strike (R. 81).

**I.**      **Background**

During the relevant time period, plaintiff David M. Bradley was a pretrial detainee at the Laurel County Correctional Center (LCCC) in London, Kentucky. He alleges that two correctional officers – defendants Lieutenant Travis Cathers and Deputy Jailer Chris Roark – used excessive force to remove a necklace from his neck when he returned to the facility from a court appearance.

The parties' versions of what happened during the removal of this necklace vary. For example, the parties contest whether the officers used a knife or scissors to remove the necklace and whether the officers asked Bradley to voluntarily remove the necklace before cutting it off. The magistrate judge appropriately summarized both parties' assertions of what happened during these events, and neither party has argued that the magistrate judge erred in his recitation of those material facts. Accordingly, for the purpose of this opinion, the Court will adopt the magistrate judge's recitation of the parties' versions of the facts. (R. 86 at 13–14.)

Bradley asserts claims against Lieutenant Cathers and Deputy Jailer Roark and also against Jailer Jamie Mosley, Captain Gary Martin, and Laurel County. He asserts a claim of excessive force

under 42 U.S.C. § 1983 against defendants Cathers and Roark (Count I); a § 1983 retaliation claim against Cathers (Count II); a § 1983 failure to hire, train, or supervise claim against Martin (Count III); a § 1983 claim for illegal policy or custom against the county (Count IV); and a state assault and battery claim against Cathers and Roark (Count V). (R. 13.)

On January 2, 2025, Defendants filed their Motion for Summary Judgment. (R. 71.) Bradley filed a response in opposition to summary judgment (R. 80), which prompted Defendants to file their Motion to Strike. (R. 81.) In their Motion to Strike, they argue that Bradley untimely disclosed materials and exhibits that should have been produced during discovery. (R. 81-1 at 5.) Now, both motions have been fully briefed.

In his recommendation, the magistrate judge recommended that (1) the Court strike certain exhibits from Bradley's response; and (2) grant summary judgment on all claims excluding the excessive force and assault and battery claims. (R. 86 at 24.) The magistrate judge gave the parties fourteen (14) days to file objections to his recommendations. (*Id.*) Defendants filed their objections within the allotted period of time. (R. 86.) The Court granted Bradley an extension of time to file his objections, which he has now filed. (R. 90.)

## II.     Bradley's Motion for Extension of Time to Respond to Objections (R. 91)

Recently, Bradley filed a Motion for Extension of Time to Respond to Defendants' Objections. (R. 91.) Defendants oppose the motion. (R. 92.) Under the rules, a party may respond to objections within 14 days of being served with a copy of them. Fed. R. Civ. P. 72(b). Defendants filed objections to the recommendation on September 2, 2025, making a response due on September 16. Bradley asserts in his motion that he did not receive the objections until September 11.

The Court will deny his motion for more time to file a response to the objections. First, Bradley's assertions regarding the reason he did not receive the objections until September 11 are contradicted by the record. Bradley asserts Defendants did not mark the envelope containing the objections as "legal mail." However, the envelope he attaches to his motion (DE 91-1) is marked, "Special Mail/Open only in the presence of inmate" in conformance with federal regulations. 28

2

C.F.R. §§ 540.2(c), 540.19(b). Further, because the mail was marked as "special mail," the regulations require the BOP staff to mark the envelope to show the date and time of receipt. 28 C.F.R. §§ 540.19, 540.18(a). Bradley attaches a copy of the front of the envelope that Defendants sent him containing their objections. The date stamp is not on the front. Thus, the date stamp is presumably on the back of the envelope, but Bradley does not attach a copy of the back of the envelope. Accordingly, the Court has no evidence of the date and time Bradley received the objections.

Secondly, even assuming Bradley did not receive the objections until September 11, he did not file this motion for an extension of time to respond until five days later (DE 91-2, Envelope.) He does not explain the reason for that delay.

Finally, this motion for summary judgment has now been extensively briefed. Bradley does not explain what information he would include in the response to the Defendants' objections to the recommendation that he would not and could not have already included in his response to the motion for summary judgment and in his objections to the recommendation.

### III. Defendants' Motion to Strike (R. 81)

Turning to the Motion to Strike (R. 81), Defendants moved to strike several exhibits that Bradley files with his response to the motion for summary judgment. Defendants argue that Bradley did not previously disclose these documents even though they would have been directly responsive to Defendants' discovery requests.

Neither party objects to the magistrate judge's recommendation that the Court deny the Motion to Strike as it pertains to Exhibit C. Because there were no objections and the Court agrees with the analysis set forth by the magistrate judge, that portion of the recommendation will be adopted.

As for Exhibits B, K, L, M, N, O, P, and Q (collectively, "the contested exhibits"), Bradley argues that the magistrate judge erred in: (1) concluding that the contested exhibits were responsive to Defendants' requests for production; and (2) finding that the contested exhibits' late disclosure

3

was not substantially justified under the factors set forth in *Howe v. City of Akron*, 801 F.3d 718, 747 (6th Cir. 2015). (DE 90.)

### 1. Whether the Contested Exhibits were Responsive to Defendants' Requests for Production.

First, Bradley argues that the magistrate judge erred in concluding that the contested exhibits were responsive to Defendants' requests for production. (*Id.* at 2.) Specifically, he asserts that the magistrate judge did not properly contextualize and interpret Defendants' Request No. 3, which asked for "all other documents in Plaintiff's custody or control that support [Plaintiff's] claim of damages." He further asserts that Request No. 3 "make[s] no reference at all to events, actions, or tortious conduct, but *only* to damages." (*Id.* at 3.) Because of those omissions, Bradley argues that the request could only be read to encompass documents specific to *only* damages and that the contested exhibits were not responsive under that interpretation of the request for production.

The Court is not persuaded by Bradley's argument. As the magistrate judge explains, the contested exhibits fit under Request No. 3 as documents in Bradley's custody that support his broad claim for damages. Just as Bradley asserts that one must consider the request in its "proper context," this request clearly referred to the damages stemming from the March 8 incident involving Bradley, Roark, and Cathers. (R. 86 at 6.) Thus, the contested exhibits were responsive to Request No. 3.

### 2. Whether Bradley's Late Disclosure of Exhibits was Substantially Justified.

Second, Bradley argues that even if the contested exhibits are covered by Request No. 3, his late disclosure was substantially justified under the relevant *Howe* factors. These factors include: (1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; (4) the importance of the evidence; and (5) the nondisclosing party's explanation for its failure to disclose the evidence. *Howe*, 801 F.3d at 748. District courts have broad discretion in applying

4

these factors and need not apply each one rigidly. *See Baker Hughes Inc. v. S&S Chem., LLC*, 836 F.3d 554, 567-69 (6th Cir. 2016).

Regarding Exhibits B and K – the declarations of Robert Whipple and Jerry Robinson – Bradley asserts that Defendants were at fault for not pursuing further discovery after being provided with Whipple's and Robinson's names. (R. 90 at 6.) At the same time, Bradley acknowledges that the magistrate judge's conclusion that "[j]ust because the individuals were referenced in discovery does not put Defendants on notice of the existence of the handwritten declarations" "is logical." (*Id.* (citing R. 86 at 10.)) Yet Bradley continues to shift the blame for nonproduction onto Defendants. As the magistrate judge concluded, "[t]his argument is faulty." (R. 86 at 10.)

Further, the late disclosure would be challenging to cure because discovery has ended, and the dispositive motion deadline has passed. With that difficulty in mind, and Bradley's weak excuse for late disclosure, the Court will overrule Bradley's objection to the striking of Exhibits B and K.

Regarding Exhibit L, M, N, O, and P, a collection of handwritten grievances, complaints, and attachments sent by Bradley to prison staff, Bradley asserts that he assumed that these exhibits were already in Defendants' possession. However, as the magistrate judge explains, Bradley did not describe Exhibits L, M, N, O, and P anywhere in the record or in responses to interrogatories to put Defendants on notice. (*Id.* at 11.) The Defendants claim to have sent over 230 pages of grievance records to Bradley, and none of those records contained these particular exhibits. (*Id.* at 12 citing R. 85 at 10.) Bradley's baseless allegation that Defendants might have "discarded or intentionally destroyed" the exhibits are not persuasive. These exhibits were responsive to Defendants' requests for production, and Bradley should have produced them.

Also, while Exhibit L is an account of the March 8 incident, Exhibits M, N, O, and P are all grievances made after the incident. The Court agrees that Exhibits M, N, O, and P "are minimally important to only some of Bradley's claims." (*Id.*) Further, these exhibits concern people or witnesses not named in this case which, if admitted, would prolong discovery to allow for the taking

of potential depositions. For the aforementioned reasons, the Court will overrule Bradley's objections to the striking of Exhibits L, M, N, O, and P.

Bradley argues that Exhibit Q, a grievance filed six months before the March 8 incident, is distinguishable from the other grievance records because it was submitted electronically to the prison staff. (R. 90 at 11.) Regardless of the nature of its submission, Bradley's argument ignores the rest of the *Howe* factors. Defendants assert that they were not in possession of Exhibit Q, and this exhibit runs into similar issues as Exhibits L, M, N, O, and P. Admitting Exhibit Q would require the Court to reopen discovery to allow Defendants the opportunity to depose and pursue further discovery from people and witnesses not named in the case. Further, these grievances are only tangentially related to the underlying case, alleging complaints "unrelated to this suit other than that they might suggest a culture supportive of civil rights violations." (R. 86 at 11.) To allow these exhibits would be "difficult, costly, and time-intensive[.]" (*Id.*) Accordingly, the Court will overrule Bradley's objections to the striking of Exhibit Q.

### III.     Motion for Summary Judgment

Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). All evidence, facts, and inferences must be viewed in favor of the nonmoving party. *See McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). "In order to defeat a summary judgment motion, . . . [t]he nonmoving party must provide more than a scintilla of evidence," or, in other words, "sufficient evidence to permit a reasonable jury to find in that party's favor." *Van Gorder v. Grand Trunk W. R.R., Inc.*, 509 F.3d 265, 268 (6th Cir. 2007) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)).

#### 1.     Excessive Force Claim

First, Defendants argued that the magistrate judge erred in recommending that the Court deny summary judgment in regard to Bradley's excessive force claim. They assert that: (1)

Bradley's allegations are not supported by sufficient evidence; and (2) Defendants Roark and Cathers are nevertheless entitled to qualified immunity. (R. 87 at 4–5.)

Qualified immunity shields federal and state officials from liability "unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right and (2) that the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. al-Kidd,* 563 U.S. 731, 735 (2011). "A right is clearly established if the contours of the right are sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Al-Lamadani v. Lang*, 624 F. App'x 405, 409 (6th Cir. 2015) (quoting *Morrison v. Bd. of Trustees of Green Twp.*, 583 F.3d 394, 400 (6th Cir. 2009) (internal quotation marks, citation, and alterations omitted)). The Court "may consider the two steps of the inquiry in either order." *Id.* The plaintiff "bears the ultimate burden of proof to show that the individual officers are not entitled to qualified immunity." *Garretson v. City of Madison Heights*, 407 F.3d 789, 798 (6th Cir. 2005). And to do so, "a plaintiff must point to a case showing that reasonable officers would have known their actions were unconstitutional under the specific circumstances they encountered." *Bell v. City of Southfield*, 37 F.4th 362, 367 (6th Cir. 2022).

In deciding whether the right was clearly established, the Supreme Court has cautioned lower courts "not to define clearly established law at a high level of generality." *Ashcroft*, 563 U.S. at 742. "This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of pre-existing law the unlawfulness must be apparent." *O'Malley v. City of Flint*, 652 F.3d 662, 667 (6th Cir. 2011) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).

The only evidence Bradley has provided in response to the motion for summary judgment that directly addresses what happened during the relevant encounter is Bradley's own declaration. (R. 80-1, Exhibit A.) For purpose of ruling on the motion for summary judgment, this declaration serves as Bradley's only evidence in support of what he asserts happened during that encounter. *Hunley v. DuPont Auto.*, 341 F.3d 491, 495-96 (6th Cir. 2003) (noting that a plaintiff must point to

7

evidence of record in affidavits, depositions, or written discovery in creating a triable issue of fact that would defeat summary judgment).

Even if the Court accepts the assertions made in that declaration, Bradley has not shown that the officers violated a clearly established right in removing his necklace. The officers have established that they reasonably considered the necklace to be prohibited by the jail's rules, which provide:

- Any inmate being admitted or returning to the facility shall be thoroughly searched. The personal property of inmates shall be collected at intake and securely stored and handled with care to prevent loss or damage until the inmate is released." (R. 71-4 Laurel Co. Corrections Policy & Procedure ("LCCPP") 4.02.)

- "The searching officer shall collect all personal property from the inmate during the booking process. Items to be collected include . . . jewelry[.]" (*Id*. 4.02-A.)

Notably, Bradley does not cite a single case that addresses excessive force in the context of the removal of contraband. He primarily focuses on broader cases concerning assaults on unarmed, restrained prisoners. While the Court agrees with the magistrate judge's analysis that the Sixth Circuit is consistent in holding that "[a]n unprovoked application of force to a handcuffed and shackled prisoner would violate clearly established law under the Eighth Amendment[,]" *Johnson v. Perry*, 106 F. App'x 467, 469 (6th Cir. 2004) (citing *Pelfrey v. Chambers*, 43 F.3d 1034 (6th Cir. 1995)), that broad principle does not make apparent the unlawfulness of the officers' actions here.

Based on Bradley's own declaration, the "application of force" during the encounter at issue is ambiguous. He insists that the officers used a knife to remove the necklace, but his declaration fails to specify whether it was the knife or necklace or some other method employed by Cathers and Roark that caused his injuries. While case law holds that the use of excessive force can be inferred from significant injuries, Bradley does not present evidence of any significant injuries that would allow this inference. *Hudson v. McMillian*, 503 U.S. 1, 7 (1992) (explaining

8

that the nature and severity of the harm inflicted are relevant to assessing whether the application of force was excessive).

Bradley instead focuses on his assertion that the officers used a knife to remove the necklace. He argues that Sixth Circuit case law prohibits this kind of conduct. (R. 80-1 Response 11 citing *Parrish v. Johnson*, 800 F.2d 600, 605 (6th Cir. 1986); *Small v. Brock*, 963 F.3d 539 (6th Cir. 2020)). The cases to which Bradley cites focus on the officer's humiliation of the prisoner and use of the knife as an active threat against the prisoner. This matter is wholly distinguishable from those cases. In Bradley's version of the encounter, he states that he returned to the facility following a court appearance and Cathers subsequently ordered Roark to remove his necklace. (R. 80-1 at 2.) He asserts that Cathers retrieved a knife, handed it to Roark, and then Roark proceeded to remove the necklace. (*Id.*) Bradley states that he began to pray and sought to prevent any escalation of force as Roark removed the necklace. (*Id.* at 3.) Significantly, he does not assert that Cathers or Roark verbally threatened him with violence or death. He does not assert that Cathers or Roark brandished the knife at him before removing the necklace. He does not assert that Cathers or Roark acted recklessly with the knife in Bradley's vicinity or during the necklace's removal. The description of the encounter in Bradley's declaration lacks any assertions of violence or threat on behalf of Cathers and Roark.

The officers used the knife to take away what they reasonably believed to be contraband. The "clearly established" analysis requires specific case law demonstrating that the officers should have known their actions, in removing Bradley's necklace, violated his Eighth Amendment rights. *See Bell*, 37 F.4th at 367; *Ashcroft,* 563 U.S. at 742. Because Bradley has not demonstrated that Defendants violated a clearly established right when removing his necklace, they are entitled to qualified immunity. Accordingly, the Court will grant summary judgment on the excessive force claim.

### 2. Assault and Battery Claims

Bradley's assault and battery claims cannot survive summary judgment for similar reasons. In Kentucky, "public officials may enjoy qualified official immunity from tort liability in negligence actions 'which affords protection from damages liability for good faith judgment calls made in a legally uncertain environment.'" *Meinhart v. Louisville Metro Government*, 627 S.W.3d 824, 831 (Ky. 2021) (quoting *Yanero v. Davis*, 65 S.W.3d 510, 522 (Ky. 2001)). Qualified official immunity protects official from negligence suits (1) deriving from discretionary acts that are (2) done in good faith and (3) fall under the scope of the official's authority. *Id.* Once a defendant has shown that an act falls under their discretionary authority, the plaintiff bears the burden to "establish by direct or circumstantial evidence that the discretionary act was not performed in good faith." *Yanero*, 65 S.W.3d at 523 (citing *Wegener v. City of Covington*, 933 F.2d 390, 392 (6th Cir. 1991), *as modified by*, *Cox v. Kentucky Dept. of Transp.*, 53 F.3d 146 (6th Cir. 1995)).

The Court concurs with the recommendation's conclusion that there are sufficient facts to show Cathers and Roark were performing discretionary acts that fell under the scope of their authority. (R. 86 at 23.) Thus, Bradley has the burden of pointing to "direct or circumstantial evidence that the discretionary act was not performed in good faith." *Yanero*, 65 S.W.3d at 523. An official is presumed to have acted in "good faith," absent evidence of "bad faith." *Rowan County v. Sloas*, 201 S.W.3rd 469, 475 (Ky. 2006).

Bradley relies on his declaration. However, it does not contain evidence from which a jury could infer that Cathers or Roark willfully and maliciously intended to harm him or acted with a corrupt motive. The evidence establishes that Cathers and Roark removed the necklace because they reasonably believed it was contraband. Accordingly, Defendants are entitled to qualified official immunity and Bradley's assault and battery claims cannot survive summary judgment.

### 3. First Amendment Retaliation Claim

Bradley argues that the magistrate judge erred in concluding that he had not produced any evidence of a retaliatory motive with respect to his First Amendment retaliation claim. Bradley

essentially restates his previous argument, asserting that Cathers had a retaliatory motive because Cathers: (1) looked at his legal materials before the relevant court appearance; (2) treated Bradley differently from other inmates who wore necklaces; and (3) acknowledged that Bradley threatened to file a lawsuit if Cathers took his necklace. (R. 90 at 13-14.) However, none of these arguments persuade the Court to deviate from the magistrate judge's recommendation.

Regarding the allegation that Cathers looked at Bradley's legal materials on the way to Bradley's court appearance on March 8, 2022, this evidence does not establish a retaliatory motive. Bradley states that Cathers "took Plaintiff's legal papers from him and began to read through them[,]" and "asked Plaintiff if the papers were the reason Plaintiff was going to court" before returning them to Bradley. (R. 80 at 17.) Nothing about this interaction, as described by Bradley himself, indicates a retaliatory motive. He does not indicate that Cathers was spiteful or harbored resentment for Bradley's filing of grievances. Instead, Bradley states that Cathers simply looked at the documents, asked their purpose, and returned them.

Bradley also asserts that, in removing the necklace, Cathers treated him differently than other inmates. Yet Bradley has not produced sufficient evidence from which a jury could infer disparate treatment. His declaration provides a conclusory statement that other people were treated differently when wearing a necklace. He does not identify any particular inmate that was treated differently.

Further, Bradley has not pointed to evidence that would establish that the removal of the necklace was an adverse action for the purpose of a retaliation claim. The Sixth Circuit has explained that when a prison's action was a "de minimis inconvenience to" the plaintiff, "it [does] not constitute cognizable First Amendment retaliation[.]" *Thaddeus-X v. Blatter*, 175 F.3d 378, 397 (6th Cir. 1999). As the Court previously discussed in its above analysis, the underlying interaction appears to involve Cathers using his discretionary judgment to remove a necklace that he believed to be contraband. Bradley has not described misbehavior on the officers' parts during the removal

11

or provided evidence that they caused any significant injury in the process. He has not alleged that any of his privileges were removed following the interaction.

Accordingly, this objection is overruled.

### 4. Supervisory Liability Claim

Bradley argues that the magistrate judge erred in concluding that he had not produced sufficient evidence to establish a supervisory liability claim against Martin. He asserts that the question is whether Martin "actually investigated the March 8 incident or spoke with Plaintiff about it." (R. 90 at 14.) Yet, any actions by Martin after the event have no bearing on this claim. As the magistrate judge explains in his recommendation, Bradley was required to show that Martin "encouraged the specific incident of the misconduct or in some other way directly participated in it." (R. 86 at 21 (citing *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999).) "Section 1983 liability will not be imposed solely upon the basis of respondeat superior." *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984). At a minimum, Bradley must point to evidence that Martin "at least implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of" subordinate officers. *Id*.

Bradley has failed to point to any evidence that Martin encouraged or participated in the March 8 incident, and he even concedes that he does not "suggest that Martin encouraged or participated in the March 8 incident." (R. 90 at 14.) Nor does Bradley point to any evidence that Martin implicitly approved of any unconstitutional conduct by the officers or knowingly acquiesced in any such conduct.

Accordingly, this objection is overruled.

### 5. Municipal Liability Claim

Bradley argues that the magistrate judge erred in granting summary judgment to Defendants on his municipal liability claim because it relied on the improper striking of evidence. (R. 90 at 15.) However, as explained, the magistrate judge was correct in recommending that the contested exhibits be stricken. Accordingly, this objection is overruled.

### III. Conclusion

For these reasons, the Court hereby ORDERS as follows:

1) Bradley's Motion for Extension of Time to File a response to objections (R. 91) is DENIED.

2) the magistrate judge's Report and Recommendation (R. 86) is ADOPTED IN PART as the Court's opinion as follows:

   a. The recommendation is ADOPTED as to findings and conclusions on the Defendants' Motion to Strike (R. 81);

   b. The recommendation is ADOPTED as to the findings and conclusions on the Defendants' Motion for Summary Judgment on the retaliation (Count II); failure to hire, train, and supervise (Count III); and illegal policy or custom (Count IV) claims; and

   c. The recommendation is NOT ADOPTED as to as to the findings and conclusions on the Defendants' Motion for Summary Judgment on the excessive force (Count I) and assault and battery claims (Count V).

3) Defendants' Motion to Strike (R. 81) is DENIED IN PART as to Exhibit C and GRANTED IN PART in that Exhibits B, K, L, M, N, O, P, and Q attached to Bradley's Response to Defendant's Motion for Summary Judgment (R. 80) are STRICKEN from the record.

4) Defendants' Motion for Summary Judgment (R. 71) is GRANTED.

5) the Court will enter a judgment contemporaneously with this opinion.

This 30th day of September, 2025.



KAREN K. CALDWELL
UNITED STATES DISTRICT JUDGE
EASTERN DISTRICT OF KENTUCKY